JANICE L. EDGINGTON, Appellant, *v.* DONALD R. EDGINGTON, Respondent.

No. 38880

December 30, 2003

80 P.3d 1282

*Allison W. Joffee,* Carson City, for Appellant.

*Peter B. Jaquette,* Carson City, for Respondent.

Before the Court EN BANC.

## OPINION

*Per Curiam:*

The primary issue in this appeal is whether the district court erred when it concluded that the parties' son is not "handicapped" within the meaning of NRS 125B.110(4), Nevada's handicapped child support statute. We conclude that a child is "handicapped" under the statute if he or she is incapable of being self-supporting because of a qualifying physical or mental impairment.

In the proceedings below, the district court did not focus on the child's ability to be self-supporting in determining whether the child was handicapped. Additionally, the record is not sufficiently developed with respect to whether the child is capable of self-support and, if not, whether any qualifying impairments are the cause. Consequently, we reverse that portion of the district court's order concerning prolonged child support, and remand the matter to the district court for further proceedings consistent with this opinion. We also reverse that portion of the order pertaining to appellant's request for attorney fees and remand for further consideration. Finally, we affirm that portion of the district court's order concerning appellant's request to increase the child support amount.

### FACTS AND PROCEDURAL HISTORY

Appellant Janice Edgington and respondent Donald Edgington were divorced in 1995. They have one son, Matthew, who was born in March 1983 and is now approximately twenty years old. At the time of the divorce, the parties entered into a stipulation concerning child custody and support, among other things. The parties agreed that Janice would have primary physical custody of Matthew and that Donald would have liberal visitation. Donald also agreed to pay child support at the statutory maximum of $500 per month until Matthew reached the age of nineteen or graduated from high school, whichever occurred first. Further, under the agreement, neither party was precluded from seeking to modify the child support arrangement in the future. The agreement was incorporated and merged by the district court into the final divorce decree.

In October 2000, when Matthew was approximately seventeen years old, Janice moved the district court to increase Donald's

child support obligation. In particular, Janice sought an increase in child support to $600 per month, $100 more than the statutory child support cap at that time, and she requested that the district court extend Donald's support obligation until June 2004, because Matthew is a "special needs child." According to Janice, Matthew is "severely hearing impaired, has [attention deficit disorder] and is Bipolar." She insisted that after graduation from high school, Matthew would be unable to live on his own since he requires special job training because of his health problems. Janice felt that with specific training, Matthew could become self-supporting. Janice also sought attorney fees on the basis that she was forced to move the district court to recover a portion of Matthew's unpaid medical expenses from Donald. On the eve of the hearing, Donald reimbursed Janice for past medical expenses, but according to Janice, he still owed her approximately $900 in outstanding medical expenses.

Donald opposed Janice's motion. He insisted that "Matthew is a far cry from the severely disabled child portrayed by" Janice. More specifically, Donald stated that Matthew has a "moderate hearing loss, and wears a hearing aid." Donald acknowledged, however, that Matthew was diagnosed with attention deficit disorder and has received medication since the diagnosis. Overall, Donald described Matthew as "a normal kid and a good kid with a perfectly normal and productive life ahead of him." As for Janice's attorney fees request, Donald challenged the amount sought, claiming that Janice's counsel could not possibly have spent as much time preparing the case as counsel claimed. Thus, Donald argued that the parties should pay their own fees.

A hearing was conducted on Janice's motion. During the hearing, Dr. Edward Lynn, Matthew's psychiatrist, testified telephonically. According to Dr. Lynn, in addition to Matthew's hearing impairment, Matthew suffers from depression, anxiety, and social phobia. The doctor also explained that at the time, Matthew was taking several medications to address his disorders. Further, Dr. Lynn testified that Matthew also suffers from a sleep disorder.

At the onset of Dr. Lynn's testimony, a letter from Dr. Lynn to Janice's counsel was offered into evidence without objection. The letter explained that Dr. Lynn's clinical opinion concerning Matthew's medical conditions is based on a review of Matthew's pediatrician's records, "and implementation and evaluation of Zung Measures of Depression and Anxiety, The Liebowitz Social Anxiety Scale, The Social Phobia Inventory, DSM IV Criteria of ADHD, and Owens Behavior Rating Scale for Attention Deficit Hyperactivity Disorder (ADHD)." The letter also states that Matthew was evaluated in a face-to-face interview.

When asked if he thought that Matthew could lead an independent life after high school graduation, Dr. Lynn replied, "I do not believe he will be able to be independent after high school graduation. I think in many ways he's socially retarded." Moreover, the doctor testified that it was his opinion that Matthew could not attend college full-time and support himself. The district court asked Dr. Lynn if he thought Matthew was "handicapped" within the meaning of the statute. Dr. Lynn stated that he thought Matthew was handicapped in terms of his hearing impairment and social anxiety. The court then asked if Matthew was "incapable of engaging in any substantial gainful activity," and the doctor responded, "Not in any but in many." The court did not define the phrase "substantial gainful activity" for Dr. Lynn, and Dr. Lynn did not explain his answer further.

Janice testified as to the financial hardships she has faced in light of Matthew's monthly medical expenses. She further testified that for a period, Matthew was not appropriately medicated and was extremely difficult to deal with. Janice explained, however, that once Matthew was prescribed bipolar medication, his behavior improved significantly.

Matthew testified that he received special assistance as a disabled student during high school. According to Matthew, as a result of his disabled student status, he was allowed to use a calculator during school when other students could not, he was given more time to take tests, and he was provided with a "note taker" to assist him. The record fails to disclose in what capacity Matthew was assisted with note taking while attending school, however. Matthew also testified that while at school, even with hearing aids, he had trouble hearing people speak and understanding what they were saying. Additional testimony revealed that Matthew volunteered for a 4-H program, and one summer through the high school he participated in a job training course and supervised a group of mentally challenged children.

On November 2, 2001, the district court entered a written order denying Janice's motion to modify the divorce decree and for attorney fees. The order reiterated that Donald still had an obligation under the parties' agreement to pay $500 per month in support until Matthew graduates from high school or turns nineteen, whichever occurs first. The order further provided that there were no changed circumstances that would warrant increasing the child support obligation by $100 per month. Finally, the district court concluded that the handicapped child support statute does not apply, as the evidence did not establish that Matthew is handicapped within the statutory definition.

## DISCUSSION

*Nevada's handicapped child support statute*

As a general rule, court ordered support obligations cease "[w]hen the child reaches 18 years of age if he is no longer enrolled in high school, otherwise, when he reaches 19 years of age."[1] The law presumes·that once a child reaches majority, the child is capable of self-support.[2] Nevada's Legislature has created a statutory exception to this general rule; under NRS 125B.110, Nevada's handicapped child support statute, parents must support a handicapped child beyond majority if the child cannot support himself or herself because of a qualifying disability. The statute, with emphasis added, creates a duty of continued support under the following circumstances:

> 1.  A parent shall support beyond the age of majority his child who is handicapped until the child is no longer handicapped or until the child becomes self-supporting. The handicap of the child must have occurred before the age of majority for this duty to apply.
> 2.  For the purposes of this section, a child is self-supporting if he receives public assistance beyond the age of majority and that assistance is sufficient to meet his needs.
> 3.  This section does not impair or otherwise affect the eligibility of a handicapped person to receive benefits from a source other than his parents.
> 4.  As used in this section, *"handicapped" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment* which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[3]

As we have recognized, "[t]he construction of a statute is a question of law."[4] In interpreting a statute, "words . . . should be given their plain meaning unless this violates the spirit of the act."[5] Thus, when a statute's language is clear and unambiguous, the apparent intent must be given effect, as there is no room for

---

[1]NRS 125.510(9)(b).

[2]*See generally* Noralyn O. Harlow, Annotation, *Postmajority Disability as Reviving Parental Duty to Support Child,* 48 A.L.R. 4th 919, 923 (1986).

[3]NRS 125B.110.

[4]*General Motors v. Jackson,* 111 Nev. 1026, 1029, 900 P.2d 345, 348 (1995).

[5]*McKay v. Bd. of Supervisors,* 102 Nev. 644, 648, 730 P.2d 438, 441 (1986).

construction.[6] If, however, a statute is susceptible to more than one reasonable meaning, it is ambiguous, and the plain meaning rule does not apply.[7] Instead, the legislative intent must be ascertained from the statute's terms, the objectives and purpose, " 'in line with what reason and public policy' " dictate.[8] Statutory interpretation should avoid meaningless or unreasonable results,[9] and "[s]tatutes with a protective purpose should be liberally construed in order to effectuate the benefits intended to be obtained."[10] Additionally, "[w]hen construing a specific portion of a statute, the statute should be read as a whole, and, where possible, the statute should be read to give meaning to all of its parts."[11]

In this case, our focus is on the meaning of "handicapped." As set forth above, the statute's definition of "handicapped" involves two considerations: (1) the child must be unable to "engage in any substantial gainful activity," and (2) the inability to engage in the activity must be "by reason of any medically determinable physical or mental impairment" that may lead to death or that has lasted or is expected to last at least twelve consecutive months. Thus, in interpreting the statute, we must examine the language "substantial gainful activity" and "medically determinable physical or mental impairment."

With respect to the phrase "substantial gainful activity," the parties offer differing dictionary definitions of the word "gainful" to support their interpretations of this phrase. Janice contends that "gainful" refers to employment[12] and that attending school is not "gainful" as provided under the statute. Donald asserts that "gainful" refers to any "advantageous" activity.[13] He contends that it is advantageous for Matthew to attend college. Further, Donald insists that the evidence established that Matthew was in the "top half of his class in school and was capable of employment or college." Since, in Donald's view, Matthew can hold a job or go to college, Donald asserts that Matthew is not handicapped under the statute.

---

[6]*Charlie Brown Constr. Co. v. Boulder City,* 106 Nev. 497, 503, 797 P.2d 946, 949 (1990), *overruled on other grounds by Calloway v. City of Reno,* 116 Nev. 250, 993 P.2d 1259 (2000).

[7]*McKay,* 102 Nev. at 649, 730 P.2d at 442.

[8]*Id.* (quoting *Robert E. v. Justice Court,* 99 Nev. 443, 445, 664 P.2d 957, 959 (1983)).

[9]*See, e.g., General Motors,* 111 Nev. at 1029, 900 P.2d at 348; *Las Vegas Sun v. District Court,* 104 Nev. 508, 511, 761 P.2d 849, 851 (1988), *overruled on other grounds by Diaz v. Dist. Ct.,* 116 Nev. 88, 993 P.2d 5 (2000).

[10]*Colello v. Administrator, Real Est. Div.,* 100 Nev. 344, 347, 683 P.2d 15, 17 (1984).

[11]*Building & Constr. Trades v. Public Works,* 108 Nev. 605, 610, 836 P.2d 633, 636 (1992).

[12]*See Webster's Third New International Dictionary* 928 (1976) (defining "gainful" as "productive of gain: profitable, . . . providing an income").

[13]*Black's Law Dictionary* 678 (6th ed. 1990).

Because the parties' differing definitions of "gainful" could plausibly refer to working, attending school, or both, we conclude that the portion of the statute referring to "substantial gainful activity" is ambiguous. We therefore turn to legislative intent, public policy and other parts of the statute to construe the meaning of the ambiguous language.

Nevada's handicapped child support statute was enacted in 1987.[14] The original provision was part of a more comprehensive child support statute that did not include a definition of "handicapped." Then, in 1991, the Legislature amended the statute by adding a definition of "handicapped."[15] The legislative history reveals that the Legislature was concerned that courts were interpreting the statute too broadly. During a hearing before the Senate Judiciary Committee, it was suggested that the Social Security Administration's definition of "disabled" be adopted to define the term "handicapped."[16]

At the time, the term "disabled," as used by the Social Security Administration, was defined by the Social Security Act as follows:

> An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity).[17]

Thus, the Nevada Legislature adopted the federal definition of "disabled" to define "handicapped" under Nevada's handicapped child support statute. This court has recognized that

> "[w]hen a federal statute is adopted in a statute of this state, a presumption arises that the legislature knew and intended to adopt the construction placed on the federal statute by federal courts. This rule of [statutory] construction is applicable, however, only if the state and federal acts are substantially similar and the state statute does not reflect a contrary legislative intent."[18]

---

[14]1987 Nev. Stat., ch. 813, § 4, at 2268-69.

[15]1991 Nev. Stat., ch. 448, § 3, at 1336.

[16]*See* Hearing on S.B. 280 Before the Senate Comm. on Judiciary, 66th Leg. (Nev., May 9, 1991).

[17]42 U.S.C. § 1382c(a)(3)(A) (1988).

[18]*State, Bus. & Indus. v. Granite Constr.*, 118 Nev. 83, 88, 40 P.3d 423, 426 (2002) (quoting *Sharifi v. Young Bros., Inc.*, 835 S.W.2d 221, 223 (Tex. App. 1992) (citation omitted)).

Here, the handicapped child support statute's definition of the term "handicapped" is almost identical to the Social Security Act's 1991 definition of "disabled." We therefore presume that the Nevada Legislature knew and intended to adopt the federal interpretation of the definition.

The Social Security Administration's interpretation of "disability" is set forth in the Code of Federal Regulations (CFR). Under the CFR, the applicant must have an impairment that makes the applicant unable to do "previous work or any other substantial gainful activity [that] exists in the national economy."[19] The CFR also explains that "[s]ubstantial gainful activity is *work activity* that is both substantial and gainful."[20] According to the CFR, "[s]ubstantial work activity" refers to "work activity that involves doing significant physical and mental activities,"[21] whereas "[g]ainful work activity" refers to work activities done "for pay or profit."[22] In addition, the CFR provides that "activities like taking care of [oneself], household tasks, hobbies, therapy, *school attendance,* club activities, or social programs" are generally not considered to be substantial gainful activities.[23] Thus, under the CFR, the term "substantial gainful activity" necessarily means an activity that results in significant *economic* gain and does not generally include school attendance.

With the CFR definitions in mind, we conclude that the term "substantial gainful activity" in Nevada's handicapped child support statute means work activity that results in the child being financially self-supporting. Our conclusion also necessarily flows from reading the statute as a whole. If "substantial gainful activity" included activities that did not result in the child's ability to be self-supporting, then the statute's requirement that support payments continue until the child is self-supporting or no longer handicapped would not make sense. In other words, parents would have no duty to support a child who could engage in non-economic activities but could not be self-supporting because the child would not be considered "handicapped" under the statute.

The handicapped child support statute is designed to ensure that handicapped children have adequate ongoing financial support from their parents, if needed. Our construction of "substantial gainful

[19]20 C.F.R. § 404.1505(a) (2003).

[20]*Id.* § 404.1572 (emphasis added).

[21]*Id.* § 404.1572(a).

[22]*Id.* § 404.1572(b).

[23]*Id.* § 404.1572(c) (emphasis added); *see also Parish v. Califano,* 642 F.2d 188 (6th Cir. 1981) (recognizing that plaintiff's attempts to attend school part-time did not establish her ability to engage in substantial gainful activity nor did it negate her multiple sclerosis disability).

activity'' comports with this purpose. Additionally, Nevada's more general public policies concerning child support and disabled persons support our conclusion that ''substantial gainful activity'' means work activity that results in the child being self-supporting. NRS 125.460(2) declares that Nevada's policy is to encourage ''parents to share the rights and responsibilities of child rearing.'' Moreover, ''[s]tate efforts to improve the circumstances of disabled citizens are indicative of the highest social character—a society attuned to the worth of an individual irrespective of physical or mental handicap.''[24] In short, all rules of statutory construction point in the same direction: ''substantial gainful activity'' means economic activity resulting in self-support.

The second part of our definitional analysis concerns the statutory language ''medically determinable physical or mental impairment.'' We conclude that this phrase is plain and unambiguous; therefore, we need go no further than the language itself. The term ''impairment'' is defined as a limitation that results in ''[a]ny loss or abnormality of psychological, physiological, or anatomical structure or function.''[25] When the term ''impairment'' is read in conjunction with its modifier, ''medically determinable physical or mental,'' it is clear that ''impairment'' means any physical or mental structural or functional limitation that can be determined by medically accepted diagnostic techniques.

We have concluded that ''substantial gainful activity'' means work activity that results in the child being self-supporting. Additionally, we have noted that ''impairment'' means any physical or mental limitation that can be medically established by accepted diagnostic techniques. A nexus must exist between these two terms, however. The statute requires that a handicapped child be incapable of engaging in ''substantial gainful activity'' *by reason of* the qualifying impairment.[26] Thus, if a child is impaired, but the impairment is not the cause of that child's inability to be. self-supporting, then the child is not considered handicapped under

---

[24]*McKay v. Bergstedt,* 106 Nev. 808, 825, 801 P.2d 617, 628 (1990).

[25]*Taber's Cyclopedic Medical Dictionary* 897 (Clayton L. Thomas ed., 16th ed. 1989).

[26]*See, e.g., State ex rel. Albert v. Sauer,* 869 S.W.2d 853, 855 (Mo. Ct. App. 1994) (holding that despite evidence indicating that child had brain damage and learning difficulties, no evidence established that due to his mental incapacities the child was unable to support himself); *Ulery v. Ulery,* 620 N.E.2d 933, 934 (Ohio Ct. App. 1993) (reversing a lower court decision requiring extended support for child who had mild brain dysfunction and educational and behavioral problems, because lower court failed to find a causal connection between the child's inability to support himself and his disability).

the statute. Similarly, if a child has a qualifying impairment but is able to support himself or herself, then that child is not handicapped under the statute's definition.

In the present case, the district court did not define "substantial gainful activity" for Dr. Lynn when eliciting his testimony. Although Dr. Lynn undoubtedly believed that Matthew's hearing impairment and his social limitations restricted the type of activity, either school or work, in which Matthew could engage, Dr. Lynn's testimony did not focus on whether Matthew could be self-supporting. Additionally, neither Janice nor Donald testified with respect to Matthew's job prospects and ability to live independently. Consequently, the record does not disclose whether, at the time of the hearing, Matthew was capable of supporting himself, and if not, whether a qualifying impairment was the cause. And, although the record includes testimony suggesting that Matthew may have a qualifying impairment, the district court made no findings in this regard. From the record, it appears that Matthew will have limitations in the type of work he can perform because of his hearing loss and social limitations. But limitations do not equate to an inability to be self-supporting.[27] Whether Matthew can or cannot be self-supporting is unclear from the record, as is the impact of his impairments on any inability to support himself. Therefore, we reverse that portion of the district court's order concluding that Matthew is not handicapped and remand for further proceedings in accordance with our construction of the statute.

### Increased child support and attorney fees

Also on appeal, Janice contends that the district court abused its discretion when it denied her motion to increase child support and for attorney fees. Janice asserts that the district court failed to give weight to Donald's standard of living and the circumstances of each parent when deciding whether to increase the child support obligation. Moreover, she contends that Donald's child support obligation should be adjusted upward from the statutory maximum because Matthew has considerable medical expenses and additional school expenses. Further, Janice insists that the district court was required to determine Donald's gross monthly income because the parties disagreed as to the amount.[28]

---

[27]See NRS 125B.110(2) (providing that if a child receives public assistance beyond majority to meet his or her needs, the child is self-supporting).

[28]Janice asserts that under NRS 125B.080(3), the district court had a mandatory duty to investigate the alleged financial discrepancy concerning Donald's income once the issue was raised. The November 2001 order did not mention Donald's income. The record reveals that Janice failed to offer any evidence in the district court regarding Donald's income. Nor did Janice argue in the dis-

This court reviews a district court child support order for abuse of discretion.[29] The record shows that the district court considered Janice's assertions and concluded that there were no changes in the parties' circumstances since they entered into their child support agreement that would warrant an increase in Donald's child support obligation. Donald was already paying the statutory maximum under the parties' agreement. The record further reveals that at the time of the proceedings, Donald was current with his child support obligation. Thus, we conclude that the district court did not abuse its discretion when it denied Janice's motion for an increase in the amount of child support, and we affirm that portion of the district court's order.

Finally, with respect to Janice's request for attorney fees, the district court *must* award reasonable attorney fees in a proceeding to enforce a child support obligation, "unless the court finds that the responsible parent would experience an undue hardship if required to pay" such fees.[30] This court will not disturb the district court's decision regarding attorney fees absent an abuse of discretion.[31] Here, Janice sought fees, in part, because she had to move the district court to recover unpaid medical expenses for which Donald was responsible under the divorce decree.[32] On the eve of the hearing, Donald reimbursed Janice for past medical expenses, but according to Janice, he still owed her approximately $900 in outstanding medical expenses. The district court summarily denied Janice's request for fees without citation to authority. We conclude that the district court abused its discretion in failing to either award Janice fees or expressly find that the fee award would cause Donald an undue hardship. Accordingly, we reverse that portion of the district court order and remand this issue to the district court for further consideration.[33]

---

trict court that a parent must be compelled to furnish financial information or other documents under NRS 125B.080(3). Thus, Janice has waived this issue on appeal. *See State of Washington v. Bagley,* 114 Nev. 788, 792, 963 P.2d 498, 501 (1998) (providing that parties cannot raise issues for the first time on appeal). Janice also raises for the first time on appeal an argument that Donald is willfully underemployed. This argument is also waived.

[29]*Wallace v. Wallace,* 112 Nev. 1015, 922 P.2d 541 (1996).

[30]NRS 125B.140(2)(c)(2).

[31]*Sprenger v. Sprenger,* 110 Nev. 855, 878 P.2d 284 (1994) (concluding that an award of attorney fees in divorce proceedings lies within the sound discretion of the district court).

[32]Janice failed to cite below any legal authority to support her request for fees.

[33]Donald argues that Janice should be subjected to NRAP 38 sanctions because Matthew is not handicapped under NRS 125B.110. As we have indi-

## CONCLUSION

For the reasons stated above, we reverse the portions of the district court order concerning the application of the handicapped child support statute and the denial of attorney fees, and we remand this matter to the district court for further proceedings. We affirm the portion of the district court order that denied Janice's motion to increase Donald's child support obligation.

cated, this case raises an issue of first impression. Janice's argument that Matthew is handicapped under the statute is certainly not frivolous. Therefore, we deny Donald's request for sanctions.