*863 OPINION

Per Curiam:

In this appeal, we must decide whether the Nevada Commission on Ethics had the authority to (1) determine whether respondents’ “Notice[s] in lieu of Statement of Financial Disclosure” and related filings satisfied NRS 281.561’s requirement that a political candidate file a financial disclosure statement;[2] and (2) seek civil penalties against respondents for violating NRS 281.561. Because we conclude that the Commission acted within its authority, we reverse.

BACKGROUND

Respondents were candidates for public office in Nevada’s 2002 general election.[3] Under NRS 281.561(1), each respondent was *864 required to file a financial disclosure statement with the Commission.[4] NRS 281.571(1) prescribes the statement’s contents: length of residency, sources of income, real estate holdings, names of creditors, gift information, business holdings, and the titles of any public offices held at the time.[5] The Commission distributed “Financial Disclosure Statement” forms that elicited this information.
Instead of filling out the forms and providing the information requested, each respondent filed with the Commission a “Notice in *865 lieu of Statement of Financial Disclosure” and/or simply wrote on the form, “I plead the 5th” or “See Notice.” The notices were nearly identical to each other, asserting that the Commission is “violative of unalienable God given rights” and part of a conspiracy to “establish a Civil Religion.” The notices also provided various commentary upon or questions regarding the statutorily required information. For instance, the notices stated that only gold or silver is “income,” and that the signatory respondent had no income to report because he or she had received no gold or silver. The notices also asked the Commission to define the symbol “$,” to indicate whether real property “under the control of the Federal government” is “under the jurisdiction of the State of Nevada,” and to indicate whether the form’s reference to “this state” is to “Nevada, a state of the union or the corporate STATE OF NEVADA?”
The Commission found that respondents violated NRS 281.561 and notified respondents that they were subject to civil penalties under NRS 281.581 for failing to file financial disclosure statements.[6] Following a hearing to consider any requests to waive or reduce the penalties, the Commission voted to seek a judicial declaration as to whether respondents’ filings were statutorily sound.
*866 Ultimately, the Commission petitioned the district court under NRS 43.100 to examine and determine the Commission’s authority to decide whether respondents had filed financial disclosure statements and to impose civil penalties against respondents. Respondents opposed the petition. The district court concluded that the Commission’s authority was limited to reviewing the filings for timeliness, and that any authority to determine the adequacy of a filing would need to be granted by the Nevada Legislature. Consequently, the district court ruled that the Commission could not fine any respondent who timely filed a “financial disclosure document.” The Commission appealed.

DISCUSSION

As this case turns on the interpretation of Nevada’s Ethics in Government Law,[7] a purely legal question, we review the district court’s order de novo.[8] We interpret the statutes that comprise the ethics law according to their plain meaning and in the context of the entire statutory scheme, consistent with the spirit of the law.[9] If statutory language is unambiguous, we may not look to extrinsic sources to decipher the statute’s meaning.[10]
Subsection (1) of NRS 281.581 states that “[a] candidate for public office . . . who fails to file his statement of financial disclosure in a timely manner ... is subject to a civil penalty” ranging from $25 up to the amount of the political office’s annual compensation. Subsections (2) and (4) authorize the Commission to waive or reduce the penalty for good cause and require the Commission to recover any penalty in a civil action. If the Commission has the power to recover and waive or reduce penalties, then axiomatically, the Commission must also have the power to determine whether a candidate has filed a financial disclosure statement. And until the Commission reviews a candidate’s filing to see that the document contains the information mandated by NRS 281.571(1), the Commission cannot discern whether the candidate has filed a financial disclosure statement. Consequently, the Commission’s express statutory power to recover and waive or reduce penalties necessarily depends on the implicit power to determine whether a candidate’s filing qualifies as a financial disclosure statement.
*867 Our conclusion is supported by other provisions of the Ethics in Government Law. For instance, NRS 281.4635(2)(b) recognizes that one of the duties of the Commission’s executive director is “[t]he review of statements of financial disclosure.” If the Legislature had intended to limit the scope of review to the simple task of ascertaining timeliness, the Legislature could have said as much, and would not have needed to compel the director to “employ such persons as are necessary to carry out any of his duties.”[11] Further, NRS 281.471(4) requires the Commission to “[i]nform the Attorney General or district attorney of all cases of noncompliance with the requirements of [NRS Chapter 281].” The Commission cannot determine whether a candidate has complied with NRS 281.561(l)’s requirement of filing a financial disclosure statement unless the Commission reviews the contents of the candidate’s filing. And if the Legislature had intended to limit the Commission’s review to timeliness, the Legislature would have used a more restrictive phrase than “all cases” of noncompliance. Finally, the Commission’s power to review a candidate’s filing to determine whether the required disclosures are present is consistent with the policy rationale for the Ethics in Government Law, which is to promote the integrity and impartiality of public officers through disclosure of potential conflicts of interest.[12]
Thus, we conclude that the Commission was vested by statute with the power to determine the adequacy of a candidate’s financial disclosure statement.[13] We also conclude that the Commission had the power to seek the statutorily-accrued civil penalties against respondents.[14] Respondents’ Notices in Lieu of Statement of Financial Disclosure and related filings were so devoid of the necessary information that they could not be considered financial disclosure statements.[15] However, because the Commission did not institute a civil *868 action to recover the penalties while it had the statutory authority to do so, any such action now falls to the Secretary of State.[16]
Respondents contend that they cannot be penalized because the disclosure statutes are unconstitutional. Specifically, respondents argue that the statutes are vague, have a chilling effect on respondents’ rights of religion, speech and assembly, and violate the Fourth and Fifth Amendments to the United States Constitution. Respondents’ arguments lack merit.
First, “[t]he vagueness doctrine is based upon the principle that ‘a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.’ ”[17] There is nothing vague about statutes that require a candidate for public office to “file .with the Commission ... a statement of financial disclosure” that recites “length of residence,” “source[s] of income,” “real estate [interests],” “name[s] of . . . creditor[s],” “gifts,” “business entity [interests],” and “public offices presently held,” and that impose a civil penalty on “[a] candidate . . . who fails to file his statement of financial disclosure in a timely manner.”[18]
Second, respondents offered no evidence below to show that the financial disclosure statutes had a chilling effect on the exercise of any First Amendment rights.[19] Consequently, we do not reach the issue.[20]
*869 Finally, the financial disclosure statutes do not implicate Fourth and Fifth Amendment concerns.[21] Respondents are required to file financial disclosure statements only if they run for public office, a purely voluntary act.[22]

CONCLUSION

Because the Commission had the statutory authority to determine whether respondents’ filings qualified as financial disclosure statements and to seek civil penalties against respondents, we reverse the district court’s order.[23]

Unless otherwise noted, all statutory references are to the 2001 Nevada Revised Statutes, as they were in place when the relevant events occurred. Effective January 1, 2004, amendments to NRS Chapter 281 transferred many of the Commission’s duties regarding financial disclosure statements to the Secretary of State. 2003 Nev. Stat., ch. 476, §§ 23, 26, 29, at 3020-22.

NRS 281.4323 defines a “candidate” as any person “[w]ho files a declaration of candidacy,” “[w]ho files an acceptance of candidacy,” or “[w]hose name appears on an official ballot at any election.”

NRS 281.561(1) provides, in relevant part:
[Tjf a candidate for public office ... is entitled to receive compensation for serving in the office in question, he shall file with the commission ... a statement of financial disclosure, as follows:
(a)A candidate for nomination, election or reelection to public office shall file a statement of financial disclosure no later than the 10th day after the last day to qualify as a candidate for the office.

NRS 281.571(1) provides, in relevant part:
Statements of financial disclosure . . . must contain the following information concerning the candidate for public office . . . :
(a) His length of residence in the State of Nevada and the district in which he is registered to vote.
(b) Each source of his income, or that of any member of his household who is 18 years of age or older. No listing of individual clients, customers or patients is required, but if that is the case, a general source such as “professional services” must be disclosed.
(c) A list of the specific location and particular use of real estate, other than a personal residence:
(1) In which he or a member of his household has a legal or beneficial interest;
(2) Whose fair market value is $2,500 or more; and
(3) That is located in this state or an adjacent state.
(d) The name of each creditor to whom he or a member of his household owes $5,000 or more, except for:
(1) A debt secured by a mortgage or deed of trust of real property which is not required to be listed pursuant to paragraph (c); and
(2) A debt for which a security interest in a motor vehicle for personal use was retained by the seller.
(e) If the candidate for public office or public officer has received gifts in excess of an aggregate value of $200 from a donor during the preceding taxable year, a list of all such gifts, including the identity of the donor and value of each gift, except:
(1) A gift received from a person who is related to the candidate for public office or public officer within the third degree of consanguinity or affinity.
(2) Ceremonial gifts received for a birthday, wedding, anniversary, holiday or other ceremonial occasion if the donor does not have a substantial interest in the legislative, administrative or political action of the candidate for public office or public officer.
(f) A list of each business entity with which he or a member of his household is involved as a trustee, beneficiary of a tmst, director, officer, owner in whole or in part, limited or general partner, or holder of a class of stock or security representing 1 percent or more of the total outstanding stock or securities issued by the business entity.
(g) A list of all public offices presently held by him for which this statement of financial disclosure is required.

NRS 281.581 provides, in relevant part:
1. A candidate for public office . . . who fails to file his statement of financial disclosure in a timely manner pursuant to NRS 281.561 is subject to a civil penalty and payment of court costs and attorney’s fees. Except as otherwise provided in subsection 3, the amount of the civil penalty is:
(a) If the statement is filed not more than 7 days late, $25 for each day the statement is late.
(b) If the statement is filed more than 7 days late but not more than 15 days late, $175 for the first 7 days, plus $50 for each additional day the statement is late.
(c) If the statement is filed more than 15 days late, $575 for the first 15 days, plus $100 for each additional day the statement is late.
2. The commission may, for good cause shown, waive or reduce the civil penalty.
3. The civil penalty imposed for a violation of this section must not exceed the annual compensation for the office for which the statement was filed.
4. The civil penalty must be recovered in a civil action brought in the name of the State of Nevada by the commission in a court of competent jurisdiction and deposited by the commission in the account for credit to the state general fund in the bank designated by the state treasurer.
5. If the commission waives a civil penalty pursuant to subsection 2, the commission shall:
(a) Create a record which sets forth that the civil penalty has been waived and describes the circumstances that constitute the good cause shown; and
(b) Ensure that the record created pursuant to paragraph (a) is available for review by the general public.

See NRS 281.411 to 281.581.

Construction Indus. v. Chalue, 119 Nev. 348, 351, 74 P.3d 595, 597 (2003).

See Edgington v. Edgington, 119 Nev. 577, 582-83, 80 P.3d 1282, 1286 (2003); 2A Norman J. Singer, Statutes and Statutory Construction 162-65 (6th rev. ed. 2000).

Rosequist v. Int’l Ass’n of Firefighters, 118 Nev. 444, 448, 49 P.3d 651, 653 (2002).

NRS 281.4635(2).

NRS 281.421.

We are not persuaded by respondents’ argument that NRS 281.465 limits the Commission’s review power. That statute simply states that the Commission has jurisdiction to “investigate” alleged violations of NRS Chapter 281 by present and former “public officers] or employee[s].” NRS 281.465(l)(a). The Commission’s jurisdiction to investigate is not at issue in this case, as the Commission did not investigate respondents. Rather, the Commission simply reviewed respondents’ filings for compliance with statutory requirements. We note, too, that the Commission has not claimed the power to verify the accuracy of submitted information.

NRS 281.581.

See NRS 281.571(1); cf. Beatty v. C.I.R., 667 F.2d 501, 502 (5th Cir.), clarified on reh’g, 676 F.2d 150 (5th Cir. 1982) (holding that petitioner’s tax return, which answered questions with “Object Self Incrimination” and included a memo explaining the purported legal grounds for objection, did not constitute a tax return for purposes of the Internal Revenue Code); United *868 States v. Verkuilen, 690 F.2d 648, 654 (7th Cir. 1982) (concluding that defendant’s filing of an income tax form containing the responses “Object: Self-incrimination” or “None” did not constitute a tax return under the Internal Revenue Code).

See supra note 2. We need not reach respondents’ argument that the Commission’s financial disclosure statement forms unconstitutionally required the signatory to affirm rather than swear to the accuracy and completeness of supplied information. Respondents are not subject to any penalties for omitting an affirmance — they are subject to penalties for failing to file financial disclosure statements.

Matter of T.R., 119 Nev. 646, 652, 80 P.3d 1276, 1280 (2003) (quoting Connally v. General Const. Co., 269 U.S. 385, 391 (1926)).

NRS 281.561; NRS 281.571; NRS 281.581; see abo Dunphy v. Sheehan, 92 Nev. 259, 263-64, 549 P.2d 332, 335 (1976) (declaring the prior Ethics in Government Law unconstitutionally vague for requiring, under penalty of perjury, disclosures of certain interests located “ ‘within the jurisdiction of the officer’s public agency’ ” (quoting former NRS 281.650(3))).

The First Amendment states: “Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.” U.S. Const, amend. I.

See Regency Sav. Bank v. Chavis, 776 N.E.2d 876, 880-81 (Ill. App. Ct. 2002); Williams v. Casualty Reciprocal Exchange, 929 S.W.2d 802, 810 (Mo. Ct. App. 1996).

The Fourth Amendment prohibits unreasonable governmental searches and seizures. U.S. Const, amend. IV. The Fifth Amendment states, among other things, that no person “shall be compelled in any criminal case to be a witness against himself.” U.S. Const, amend. V.

See Bullock v. Carter, 405 U.S. 134, 142-43 (1972); Barry v. City of New York, 712 F.2d 1554, 1564 (2d Cir. 1983) (doubting that the Fourth Amendment applies to requirements that candidates for public office file financial disclosure statements); Hiibel v. Sixth Judicial Dist. Court of Nev., 542 U.S. 177, 189-90 (2004) (stating that the Fifth Amendment prohibits only compelled and incriminating testimony, and only protects against disclosures that the witness reasonably believes might be used in a criminal prosecution or could lead to other evidence that might be used in such a prosecution).

Respondents’ request for sanctions is denied.