OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 In this appeal, we consider, for the first time, multiple sections of Nevada’s Uniform Act on Rights of the Terminally 111 (the Act), codified in NRS 449.535 through 449.690. The Act authorizes the use of three procedures by which terminally ill patients or their families can legally implement their wishes with regard to withholding or withdrawing life-sustaining treatment. First, an individual may execute a declaration directing an attending physician to withhold or withdraw life-sustaining treatment under certain circumstances.
 
 [1]
 
 Second, an individual may execute a declaration designating another person to make decisions on the individual’s behalf regarding withholding or withdrawing life-sustaining treatment.
 
 [2]
 
 Third, in the absence of either an express declaration or a declaration designating another person to make life-sustaining treatment decisions, a terminally ill patient’s attending physician may withhold or withdraw life-sustaining treatment from the patient upon receiving surrogate consent from certain members of the patient’s family.
 
 [3]
 

 Here, after their mother died, appellants Richard Kaminski and Steven Kaminski, M.D., brought an action for medical malpractice wrongful death, among other claims, against respondent Jon Darden, M.D., an emergency care physician; multiple corporate entities; and other defendants not parties to this appeal. The Kaminskis maintained below, as they do on appeal, that Dr. Darden improp
 
 *450
 
 erly withheld treatment from their mother, Avis Maxey, in reliance on an invalid surrogate consent. The Kaminskis appeal from the district court’s partial summary judgment in favor of Dr. Darden and appellants EmCare of Nevada, Inc.; EmCare Physician Services, Inc.; EmCare, Inc.; SEC/EmCare Emergency Care, Inc.; and EmCare Silver (collectively, corporate entities) on three grounds. First, they argue that Dr. Darden was not Avis’s attending physician for purposes of the Act and that he therefore lacked authority to withhold or withdraw life-sustaining treatment. Second, they argue that the surrogate consent form signed by Avis’s ex-husband was attested improperly and was thus invalid to authorize Dr. Darden to withhold life-sustaining treatment under the Act. Third, they argue that Dr. Darden did not exercise reasonable medical care when he classified Avis as terminally ill.
 

 With regard to appellants’ first two appellate arguments, although we conclude that Dr. Darden was Avis’s attending physician under the Act and that he therefore had the authority to make decisions concerning withholding life-sustaining treatment from Avis, summary judgment nevertheless was not appropriate here because genuine issues of material fact exist with respect to the validity of the surrogate consent to withhold treatment. In particular, the record does not reveal whether the surrogate consent was attested by two witnesses with personal knowledge, gained in the purported surrogate’s presence, of his signature on the consent form and his intent to consent to withholding life-sustaining treatment from Avis.
 

 As for appellants’ third argument on appeal, the Act immunizes physicians from civil and criminal liability for decisions made in accord with reasonable medical standards. In this case, genuine issues of material fact remain concerning whether the attending physician’s decisions were made in compliance with that standard. Accordingly, we reverse the district court’s grant of summary judgment and remand this matter to the district court for proceedings consistent with this opinion.
 

 FACTS
 

 It is undisputed that, in July 2002, 72-year-old Avis Maxey ingested approximately 200 prescription pills in an apparent suicide attempt. Her ex-husband, Theodore Maxey, with whom she still resided, discovered her unconscious and breathing shallowly. However, Theodore waited several hours before calling Avis’s daughter-in-law, Deborah Kaminski. Theodore told Deborah that although Avis had attempted suicide, he did not want to call an ambulance because he believed Avis wanted to kill herself, and he did not want to disregard Avis’s wishes. Thereafter, paramedics were called and found Avis alive but comatose. An incident report,
 
 *451
 
 filled out by the paramedics who responded, indicates that although Theodore advised the paramedics that he had “power of attorney” and did not want them to attempt to resuscitate Avis, the paramedics determined “that a suicide attempt cancels out [any] power of attorney’ ’ and therefore began efforts to resuscitate her.
 

 Avis was admitted to the emergency room at Desert Springs Hospital in Las Vegas approximately 30 minutes later, at 3:36 p.m. Dr. Darden was the emergency room doctor on duty at that time. Nurse Shannon Thompson also was on duty, and she assisted Dr. Darden in caring for Avis. At approximately 3:45, Dr. Darden responded to Avis’s bedside and intubated her. During this process, Theodore signed a Patient Classification Order, provided by the hospital, classifying Avis as a “Class III” patient. A Class III patient’s treatment is limited to “[diagnostic and therapeutic efforts” which will “increase comfort with no attempt to prolong life.’ ’
 
 [4]
 
 Dr. Darden also signed the order, but Nurse Thompson did not. At approximately 3:55, Dr. Darden extubated Avis at Theodore’s request but provided her with an oxygen mask. Nurse Thompson made the following notation in Avis’s chart: “15:55 [Patient] Cat. Ill per husband’s req.” At approximately 4:05, Dr. Darden removed the oxygen mask at Theodore’s request. Nurse Thompson made the following notation in her nursing notes, “16:05 . . . [oxygen] mask removed per husband’s request.”
 

 At approximately 4:35 p.m., Dr. Kenneth Mower relieved Dr. Darden and responded to Avis’s bedside. Between 5:45 and 7:05 p.m., Avis’s respirations decreased from 4-6 per minute to 3 per minute. At approximately 7:20, Dr. Mower ordered Nurses Thompson and Rochelle Read to medicate Avis for pain by administering 100 milligrams of morphine to her in “short intervals.” Dr. Mower pronounced Avis dead at approximately 7:50 p.m. Hospital personnel subsequently notified Avis’s primary care physician, Dr. Judith Ameriks, of Avis’s death. Dr. Ameriks responded that she would sign Avis’s death certificate in the morning.
 

 Less than one month later, the Nevada State Board of Medical Examiners began investigating the circumstances surrounding Avis’s death. A board investigator interviewed Drs. Darden and Mower. Dr. Darden explained that Theodore had told him that Avis did not wish to be resuscitated and that, although he had not verified Avis’s wishes by checking for the existence of any advance directive or living will or by speaking to any of her other family members, he ordered her extubated and administered only pallia
 
 *452
 
 live care. The board eventually revoked Dr. Mower’s medical license, finding that he committed malpractice by administering morphine to Avis because she was not terminally ill.
 
 [5]
 

 The Kaminskis filed a complaint for professional negligence, vicarious liability, breach of contract, negligence, medical malpractice, and punitive damages against Dr. Darden, Dr. Mower, Nurse Thompson, Nurse Read, Theodore, and the corporate entities. In April 2005, Dr. Darden and the corporate entities filed a motion for summary judgment, arguing that Avis was in a terminal condition and that Dr. Darden’s determination that Theodore’s surrogate consent was valid was conclusive as a matter of law. The Kaminskis opposed the motion and filed countermotions for sanctions and to conduct additional discovery pursuant to NRCP 56(f). The Kaminskis attached the affidavit of Dr. Paul Bronston to their opposition. In his affidavit, Dr. Bronston stated that in his opinion, Drs. Darden and Mower breached the standard of care by classifying Avis as terminal. After hearing oral argument on the motions, the district court entered a conclusory order granting summary judgment in favor of Dr. Darden and the corporate entities
 
 [6]
 
 and denying the Kaminskis’ requests for relief.
 

 The Kaminskis filed a motion for reconsideration and attached to it a second affidavit from Dr. Bronston, in which he stated that Dr. Darden acted unreasonably by classifying Avis as being in terminal condition. The district court denied the motion for reconsideration and certified its summary judgment order as final under NRCP 54(b). The case remains pending in district court as to certain remaining defendants. The Kaminskis now appeal the district court’s order granting summary judgment in favor of Dr. Darden.
 

 DISCUSSION
 

 Nevada’s Uniform Act on Rights of the Terminally 111 permits an attending physician to withhold or withdraw life-sustaining treatment from a terminally ill patient based on either the patient’s firsthand declaration,
 
 [7]
 
 consent from the patient’s designee,
 
 [8]
 
 or consent from one of the patient’s family members (surrogate consent).
 
 [9]
 
 In this case, because Avis had neither executed a declaration nor des
 
 *453
 
 ignated a decision maker, the Act’s provision authorizing the withholding or withdrawing of life-sustaining treatment upon receiving valid surrogate consent is at issue.
 

 The Act provides that three conditions must be met before a patient’s attending physician may withdraw or withhold life-sustaining treatment from the patient upon receiving surrogate consent.
 
 [10]
 
 First, the surrogate must consent to withdrawing or withholding life-sustaining treatment in writing, “attested by two witnesses.”
 
 [11]
 
 Second, the attending physician must determine that the patient is in a terminal condition and no longer able to make her own decisions regarding administration of life-sustaining treatment.
 
 [12]
 
 Third, the patient must not already have an effective declaration concerning life-sustaining treatment.
 
 [13]
 

 Here, the Kaminskis challenge the district court’s order granting Dr. Darden’s motion for summary judgment, arguing that genuine factual disputes remain on three material issues concerning the removal of Avis’s life-sustaining treatment. First, the Kaminskis argue as a threshold issue that Dr. Darden was not Avis’s attending physician and, therefore, he did not have the authority to withhold life-sustaining treatment from Avis. Second, they argue that Theodore’s surrogate consent was not attested by two witnesses as required by NRS 449.626(1) and was therefore invalid. Third, the Kaminskis argue that even if Dr. Darden was Avis’s attending physician and the surrogate consent was valid, Dr. Darden did not act in accord with reasonable medical standards when he determined that Avis was in a terminal condition. We will address each contention in turn.
 

 Standard of review
 

 This court reviews a district court order granting a motion for summary judgment de novo.
 
 [14]
 
 “ ‘Summary judgment is appropriate under NRCP 56 when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that are properly
 
 *454
 
 before the court demonstrate that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.’ ”
 
 [15]
 
 “A factual dispute is genuine when the evidence is such that a rational jury could return a verdict in the nonmoving party’s favor.”
 
 [16]
 

 Dr. Darden was Avis’s attending physician
 

 Under the Act, only the patient’s attending physician is authorized to withhold or withdraw life-sustaining treatment from a patient. The Kaminskis argue that Avis’s primary care physician, Dr. Ameriks, was Avis’s attending physician because she had a thorough knowledge of Avis’s medical history and she called 911 after Avis’s suicide attempt.
 
 [17]
 
 Therefore, they assert that Dr. Darden’s actions in withholding treatment from Avis were not authorized. Dr. Darden argues that because he was the on-duty emergency room doctor at the time of Avis’s admission, he was her attending physician.
 

 NRS 449.550 defines “attending physician” as “the physician who has primary responsibility for the treatment and care of the patient.” “The interpretation of a statute is a legal question subject to de novo review.”
 
 [18]
 
 When construing a statute, we look first to the statute’s plain language.
 
 [19]
 
 When, however, a statute is susceptible to more than one reasonable interpretation, it is ambiguous, and we must then look beyond the plain language to “examine the statute in the context of the entire statutory scheme, reason, and public policy to effect a construction that reflects the Legislature’s intent.”
 
 [20]
 

 The Act’s definition of “attending physician” is ambiguous because the temporal limitation on the phrase “primary responsibility” is unclear, and thus, both Dr. Darden’s and the Kaminskis’ interpretations of attending physician are reasonable. In particular, it is unclear whether the attending physician is one who has primary responsibility for the care of the patient at the time when the patient’s terminal status becomes an issue or one who generally has
 
 *455
 
 had primary responsibility for the patient’s care over a period of time,
 
 i.e.,
 
 the patient’s primary care physician. In order to resolve this ambiguity, we look to the Act’s history.
 

 The purpose of the Act is to vest authority and control regarding the administration of life-saving treatment in the patient or the patient’s close family members.
 
 [21]
 
 To accomplish its purpose, the Act establishes methods so that the patient’s or the patient’s family’s wishes can be effectuated as easily and with as little bureaucratic interference as possible.
 
 [22]
 
 Furthermore, comparison of Nevada’s version of the definition of “attending physician” with those contained in certain other states’ codifications of the Uniform Rights of the Terminally 111 Act suggests that the Nevada Legislature intended a broad formulation of the term. For example, the Ohio Legislature defines “attending physician” as “the physician to whom a principal or the family of a principal has assigned primary responsibility for the treatment or care of the principal or, if the responsibility has not been assigned, the physician who has accepted that responsibility.”
 
 [23]
 
 The Nevada Legislature’s decision not to define “attending physician” with any additional level of specificity suggests its intent to allow a wide class of treating physicians to be deemed the attending physician.
 

 In light of the Act’s purpose and the Nevada Legislature’s decision not to define “attending physician” with any particular limitations, we determine that the Legislature intended the attending physician to be the physician who has primary responsibility for the patient’s treatment and care at the time when administering life-sustaining treatment becomes an issue. We believe that our broad interpretation provides the greatest respect for the patient and the patient’s family members by reducing the risk of confusion and bureaucratic interference with effectuating a terminally ill patient’s or the patient’s family’s wishes regarding life-sustaining treatment and procedures.
 

 Under this interpretation, Dr. Darden was Avis’s attending physician because he was the physician with primary responsibility for her treatment at the time when administering life-sustaining treatment became an issue. Dr. Darden assumed care for Avis
 
 *456
 
 upon her admission and he continued to care for her until he was relieved by Dr. Mower. Although, as discussed below, genuine issues of material fact exist concerning the propriety of Dr. Darden’s decision to classify Avis as terminally ill, we conclude that he was her attending physician and therefore was authorized, upon receiving valid surrogate consent, to withhold or withdraw lifesaving treatment, assuming compliance with the other conditions imposed by the Act.
 

 Genuine issues of fact exist regarding whether Theodore’s surrogate consent was valid
 

 As a preliminary matter, Dr. Darden argues that NRS 449.626(5), which provides that “[a] decision of the attending physician acting in good faith that a consent is valid or invalid is conclusive,” shields from judicial review the attending physician’s determination that a surrogate consent satisfies the requirements enumerated in NRS 449.626(1). In this argument, Dr. Darden seeks to excuse noncompliance with the statutory attestation requirements. We disagree. Instead, we conclude that the conclusiveness language contained in NRS 449.626(5) extends only to the attending physician’s determination that a family member was acting as the surrogate as permitted under NRS 449.626(2). Accordingly, whether a surrogate consent complies with the Act’s legal requirements is subject to judicial review.
 

 Turning to those requirements, the Act mandates that, as a prerequisite to withholding or withdrawing life-sustaining treatment, an attending physician must be acting on the surrogate’s written consent, “attested by two witnesses.”
 
 [24]
 
 In this case, it is not disputed that Theodore signed a written Patient Classification Order, purportedly authorizing Dr. Darden to withdraw Avis’s life-sustaining treatment. It also is not disputed that Dr. Darden attested the Patient Classification Order. Recognizing, however, that the Patient Classification Order must be attested by two witnesses, Dr. Darden argues that Nurse Thompson’s chart notes, in which she documented that Avis was a “Cat. Ill per husband’s req.” and that Avis’s oxygen mask was “removed per husband’s request,” were sufficient to constitute a second attestation to Theodore’s surrogate consent.
 

 NRS 449.626(1) provides:
 

 If written consent to the withholding or withdrawal of the treatment, attested by two witnesses, is given to the attending physician, the attending physician may withhold or withdraw life-sustaining treatment from a patient.
 

 
 *457
 
 We must decide what constitutes an attestation under this statute. As stated above, where statutory language is plain and unambiguous, we are not permitted to search for meaning beyond the statute itself.
 
 [25]
 
 The text of NRS 449.626(1) is plain and unambiguous, requiring a surrogate’s written consent to be attested by two witnesses, and our sole duty then is to give effect to the statute’s plain, obvious meaning.
 

 Although decided in the context of a determination of the validity of the will, our decision in
 
 Matter of Estate of Friedman
 
 is instructive with regard to the attestation requirement at issue here. In
 
 Friedman,
 
 we held that a notary’s signature on a self-proving affidavit attached to a will could constitute an attestation within the meaning of NRS 133.040, the statute governing the validity of wills.
 
 [26]
 
 Under NRS 133.040, a will’s validity is contingent on it being written and signed by the testator and attested by at least two competent witnesses. In
 
 Friedman,
 
 giving effect to the plain meaning of attest, we explained that the attestation requirement was satisfied if the attesting witnesses had personal knowledge that the testator signed the will with the intent that it be the testator’s last will and testament.
 
 [27]
 
 The notary in
 
 Friedman
 
 submitted an affidavit during the probate proceedings, averring that she was present at the time when the testator signed the will and declared it her last will and testament.
 
 [28]
 
 We determined that the notary had thus properly attested the will.
 
 [29]
 

 Consistent with our interpretation of the witness attestation requirement at issue in
 
 Friedman,
 
 and giving effect to the plain and clear terms of the statute by applying their common meanings, we determine that under NRS 449.626(1), an attesting witness must have personal knowledge that the surrogate gave written consent to withholding or withdrawing the terminally ill patient’s life-sustaining treatment. If an attesting witness is present at the time when the surrogate provides written consent, personal knowledge of the surrogate’s intent is presumed. Because, however, NRS 449.626(1) does not require an attesting witness to subscribe his or her name to the consent form,
 
 [30]
 
 but instead only requires attestation, proof of the attesting witness’s personal knowledge is not
 
 *458
 
 necessarily limited to the witness’s signature on the consenting document.
 
 [31]
 

 In this case, although Dr. Darden argues that Nurse Thompson’s notes evidence that she had, as a matter of law, personal knowledge that Theodore signed the surrogate consent, we disagree. Nurse Thompson’s notes simply recite Avis’s status as terminal and state that Avis’s categorization as a Class III patient was “per husband’s req[uest].” In making the notes, Nurse Thompson did not indicate whether she was in Theodore’s presence and thus had personal knowledge that Theodore signed the Patient Classification Order. Accordingly, because genuine issues of fact remain with regard to whether Nurse Thompson possessed the requisite personal knowledge to attest to Theodore’s purported consent, summary judgment was not appropriate here.
 

 Genuine issues of fact exist regarding whether Dr. Darden exercised reasonable medical care when classifying Avis as terminally ill
 

 The Act defines “terminal condition” as “an incurable and irreversible condition that, without the administration of life-sustaining treatment, will, in the opinion of the attending physician, result in death within a relatively short time.”
 
 [32]
 
 Dr. Darden asserts that because the definition of “terminal condition” is phrased with reference to the attending physician’s opinion, the attending physician has the exclusive right to determine whether a patient is terminally ill and that the determination is not judicially reviewable. We disagree.
 

 Under the Act, the actions of health care professionals, taken pursuant to the Act and in accord with reasonable medical standards, are immunized from civil liability. In full, NRS 449.630(2) provides as follows:
 

 A physician or other provider of health care, whose action pursuant to [the Act] is in accord with reasonable medical standards, is not subject to civil or criminal liability, or discipline for unprofessional conduct, with respect to that action.
 

 Dr. Darden’s position — that an attending physician’s determination that a patient is terminally ill is conclusive — fails to recognize that
 
 *459
 
 NRS 449.630(2) sets forth a standard of care by which all actions taken pursuant to the Act are examined. In particular, NRS 449.630(2) imposes on physicians a duty to act in accord with reasonable medical standards when making determinations under the Act. Only if the physician acts in accord with such standards is he or she entitled to immunity from civil liability. A physician’s conformity to the standard, when taking any action under the Act, including the determination that a patient is terminally ill, is therefore subject to judicial review.
 

 In this case, genuine issues of fact exist with regard to Dr. Darden’s compliance with reasonable medical standards in classifying Avis as terminally ill. In opposing summary judgment, the Kaminskis submitted affidavits from Dr. Bronston, an emergency room physician, in which he gave his opinion that Dr. Darden did not comply with the accepted standard of care when he classified Avis as terminally ill. Viewing the evidence in the light most favorable to the nonmoving party, a rational jury could conclude, based on Dr. Bronston’s expert opinion, that Dr. Darden’s conduct fell below reasonable medical standards. Thus, the district court erred by granting summary judgment in favor of Dr. Darden and the corporate entities.
 

 CONCLUSION
 

 We conclude that Dr. Darden was Avis’s attending physician within the meaning of the Act and, therefore, that he had the authority to withdraw or withhold life-sustaining treatment from Avis upon receiving a valid surrogate consent and upon complying with the Act’s other provisions. However, genuine issues of material fact remain with regard to whether Theodore’s surrogate consent was valid under the Act. Genuine issues of material fact also remain with regard to whether Dr. Darden complied with reasonable medical standards when he classified Avis as terminally ill as defined by the Act. Accordingly, we reverse the district court’s summary judgment and remand this matter to the district court for a determination of whether Theodore’s surrogate consent was valid, and, if so, whether Dr. Darden properly classified Avis as terminally ill.
 

 Parraguirre and Douglas, JJ., concur.
 

 [1]
 

 NRS 449.600(1).
 

 [2]
 

 Id.
 

 [3]
 

 NRS 449.626(1)-(2). A surrogate’s consent must be made in good faith and is invalid if it conflicts with the patient’s known intentions. NRS 449.626(4).
 

 [4]
 

 The order further provided:
 

 Analgesia is essential, oxygen and rarely blood products can be given for comfort. Medications, diagnostic tests, tube feeding or IV fluids should be avoided. Patient can be on or off ventilator. The patient is transferred to a non-telemetry bed.
 

 [5]
 

 The record does not reveal whether the board took disciplinary action against Dr. Darden.
 

 [6]
 

 Since the Kaminskis’ claims against the corporate entities arise from Dr. Darden’s alleged negligence and his professional association with those entities, Dr. Darden and the corporate entities will be herein referred to collectively as Dr. Darden.
 

 [7]
 

 NRS 449.600(1).
 

 [8]
 

 Id.
 

 [9]
 

 NRS 449.626(1)-(2).
 

 [10]
 

 “Although the Act does not permit a patient’s ex-spouse to consent on the patient’s behalf, the Kaminskis do not challenge the validity of the surrogate consent on this ground, conceding that Dr. Darden was unable to ascertain Theodore’s status as Avis’s ex-husband.
 

 [11]
 

 NRS 449.626(1). Importantly, a patient’s firsthand declaration as well as a patient’s declaration designating another individual as decision maker must also be attested by two witnesses.
 
 See
 
 NRS 449.600(1).
 

 [12]
 

 NRS 449.626(1)(a).
 

 [13]
 

 NRS 449.626(1)(b).
 

 [14]
 

 Sustainable Growth
 
 v.
 
 Jumpers, LLC,
 
 122 Nev. 53, 61, 128 P.3d 452, 458 (2006).
 

 [15]
 

 Id.
 
 (quoting
 
 Wood v. Safeway, Inc.,
 
 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005)).
 

 [16]
 

 Id.
 

 [17]
 

 We note that the record is unclear as to whether Dr. Ameriks or Avis’s daughter-in-law called 911.
 

 [18]
 

 Matter of Estate of Friedman,
 
 116 Nev. 682, 684, 6 P.3d 473, 475 (2000).
 

 [19]
 

 Edgington v. Edgington,
 
 119 Nev. 577, 582-83, 80 P.3d 1282, 1286 (2003).
 

 [20]
 

 Richardson Constr. v. Clark Cty. Sch. Dist.,
 
 123 Nev. 61, 64, 156 P.3d 21, 23 (2007).
 

 [21]
 

 Hearing on A.B. 8 and S.B. 200 Before the Senate & Assembly Joint Comm., 59th Leg. (Nev., Feb. 28, 1977).
 

 [22]
 

 See
 
 Unif. Rights of the Terminally Ill Act § 2 cmt., 9C U.L.A. 322 (1989) (noting that the Act imposes few qualifications on witnesses because “the interest in simplicity mandates as uncomplicated a procedure as possible” and that imposing additional requirements on witnesses could jeopardize the effectiveness of terminally ill patients’ declarations).
 

 [23]
 

 Ohio Rev. Code Ann. § 1337.11(B) (LexisNexis 2006).
 
 See also
 
 Mont. Code Ann. § 50-9-102(3) (2007) (“ ‘Attending physician’ means the physician selected by or assigned to the patient, who has primary responsibility for the treatment and care of the patient.”).
 

 [24]
 

 NRS 449.626(1).
 

 [25]
 

 Matter of Estate of Friedman,
 
 116 Nev. 682, 685, 6 P.3d 473, 475 (2000).
 

 [26]
 

 Id.
 
 at 686, 6 P.3d at 476.
 

 [27]
 

 Id.
 

 [28]
 

 Id.
 
 at 683-84, 6 P.3d at 474.
 

 [29]
 

 Id.
 
 at 686, 6 P.3d at 476.
 

 [30]
 

 See In re Estate ofWachsmann,
 
 563 N.E.2d 734, 737 n.2 (Ohio Ct. App. 1988) (distinguishing subscription — “the physical act whereby a subscribing witness affixes his signature on a will for purposes of identification” — from at
 
 *458
 
 testation — “the act whereby a subscribing witness either sees the testator sign the will or hears an acknowledgment of a signature previously placed on the will”).
 

 [31]
 

 Compare
 
 NRS 133.040 (requiring attesting witnesses to “subscribe their names to the will in the presence of the testator”)
 
 with
 
 NRS 449.626(1) (requiring a surrogate’s consent to withhold or withdraw life-sustaining treatment to be attested by two witnesses).
 

 [32]
 

 NRS 449.590.